Matter of McGowan (DiNapoli) (2019 NY Slip Op 09066)





Matter of McGowan (DiNapoli)


2019 NY Slip Op 09066


Decided on December 19, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 19, 2019

528231

[*1]In the Matter of James K. McGowan, Petitioner, Thomas P. DiNapoli, as State Comptroller, Respondent.

Calendar Date: November 21, 2019

Before: Garry, P.J., Egan Jr., Lynch and Devine, JJ.


Law Office of Jeffrey L. Goldberg, PC, (Timothy McEnaney of counsel), for petitioner.
Letitia James, Attorney General, Albany (Sarah L. Rosenbluth of counsel), for respondent.



Lynch, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent denying petitioner's application for accidental disability retirement benefits.
Petitioner worked in various law enforcement capacities, retiring in 2009 while serving as Assistant Police Chief for the Waterfront Commission of New York Harbor. He thereafter applied for accidental disability retirement benefits, alleging that he was permanently incapacitated from performing his duties as a result of a work-related motor vehicle accident in 2005. His application was denied on the ground that he was not permanently incapacitated from performing his duties. Following a hearing and the submission of medical reports and records, the Hearing Officer upheld the denial, finding that petitioner had not sustained his burden of establishing his permanent incapacitation, a determination which respondent upheld. Petitioner commenced a CPLR article 78 proceeding challenging that determination, and this Court found that respondent had applied an incorrect legal standard, annulled the determination and remitted for further proceedings (Matter of McGowan v New York State & Local Police and Fire Ret. Sys., 148 AD3d 1344 [2017]). Upon remittal, the case was reassigned and the parties stipulated that the application would be decided based upon the existing record. The Hearing Officer issued a new determination upholding the denial of petitioner's application, finding that he had failed to demonstrate that he was permanently incapacitated from performing his job duties, and respondent adopted those findings and conclusions. Petitioner commenced this proceeding challenging that determination.
We confirm. "In connection with any application for accidental or performance of duty disability retirement benefits, the applicant bears the burden of proving that he or she is permanently incapacitated from the performance of his or her job duties" (Matter of Solarino v DiNapoli, 171 AD3d 1434, 1435 [2019] [internal quotation marks and citations omitted]; see Matter of Ellrodt v DiNapoli, 169 AD3d 1128, 1128-1129 [2019]). "Moreover, respondent is vested with the authority to resolve conflicting medical evidence in that regard and to credit one expert's opinion over another, and his determination will be sustained if supported by substantial evidence" (Matter of Ellrodt v DiNapoli, 169 AD3d at 1129 [internal quotation marks and citation omitted]).
Respondent conceded that the 2005 incident was an accident, and the sole issue before us is, therefore, whether petitioner was permanently incapacitated as a result (see Retirement and Social Security Law § 363 [a] [1]).[FN1] Petitioner testified that he had been in law enforcement since 1974 and was the Assistant Chief of Police of the Waterfront Commission, serving as the Acting Chief of Police in January 2005, when he was involved in a work-related motor vehicle accident, injuring his knee, wrists and neck. He missed two weeks of work and thereafter returned to full duty without restrictions until 2009, when he took a service retirement while on full duty, which he attributed to his physical inability to pass a required firearms test or to perform the physical duties of his position. He testified that, in the years after the 2005 accident, he was treated for neck and back pain and limited mobility, with no relief, and that his pain and abilities grew progressively worse. At the time of the 2015 hearing, he was treating only with a rheumatologist for his neck and back pain and complained of "stiffness" in his neck and tremors in his left hand. The tremors were caused by the neurological condition neurofibroma that he was told may have been congenital; the condition was first diagnosed in 2000 and was thereafter monitored but did not change. He has not had surgery and none was planned, and he last engaged in physical therapy in 2007, which did not help.
A key disputed issue before respondent, which related to whether petitioner was permanently incapacitated, was the nature of his job duties prior to his retirement. Petitioner characterized his position as half administrative and half non-sedentary law enforcement, the latter involving undercover investigations, assisting in arrests and conducting surveillance. However, when questioned about the year before his retirement, he could only testify that he had assisted in "at least one" arrest and had "possibly" executed a search warrant. After his retirement, petitioner was employed as a government contractor performing background checks and interviews for persons seeking security clearance. Petitioner relied on the medical records and reports of his treating physicians, particularly reports of his physiatrist who opined in 2009 and again in 2012 that he was "totally disabled" as a result of the 2005 accident, although ongoing treatment was recommended and permanency was not addressed.
Respondent relied upon medical reports of Jeffrey Meyer, a board-certified orthopedic surgeon who examined petitioner in 2012 and reviewed his medical records, and concluded that he had an underlying rheumatological condition but was not disabled from performing the duties of assistant police chief. Respondent expressly credited Meyer, finding that his reports were "thorough and complete" and that his conclusions were "reasonable and persuasive." Given that Meyer's opinion was based upon his examination of petitioner and a review of his medical records and "provided a rational, fact-based opinion upon which respondent was free to rely," we find that substantial evidence supported the determination that petitioner was not permanently incapacitated from performing his actual job duties (Matter of Solarino v DiNapoli, 171 AD3d at 1436 [internal quotation marks and citation omitted]; see Matter of Buckley v DiNapoli, 166 AD3d 1265, 1267 [2018]; Matter of O'Halpin v New York State Comptroller, 12 AD3d 771, 772 [2004], lv denied 5 NY3d 702 [2005]; 2 NYCRR 364.1).
In reaching the conclusion that petitioner was not permanently incapacitated, Meyer relied upon requested documentation provided by the General Counsel to the Waterfront Commission in June 2012 indicating that petitioner had chosen not to appear for the required firearms requalification course despite being given ample opportunities. Counsel's letter indicated that petitioner did not engage in arrests on any regular basis and that, prior to his retirement, his on-site supervision of law enforcement was "generally sedentary." Meyer concluded from all of the evidence that, based on the supervisory nature of petitioner's job and his ongoing post-retirement work as an investigator, he was capable of working an eight-hour day, although not able to engage in arrests or physical activity, and was not disabled from performing the duties of assistant police chief. Although petitioner offered contrary testimony that he engaged in more active law enforcement job duties, particularly in the years prior to the accident, his testimony did not establish that he regularly performed physical activity or arrests in the year prior to his retirement. It was within respondent's authority to resolve these factual issues regarding the nature of petitioner's work, findings which will not be disturbed where, as here, they are supported by substantial evidence (see Matter of Cascarano v DiNapoli, 148 AD3d 1504, 1504 [2017]; Matter of Riguzzi v DiNapoli, 82 AD3d 1484, 1485 [2011]; Matter of O'Halpin v New York State Comptroller, 12 AD3d at 772). We have examined petitioner's remaining contentions and determined that they lack merit.
Garry, P.J., Egan Jr. and Devine, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: Neither the Hearing Officer nor respondent decided the issue of causation.